IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 4:15-CR-105 |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| WYNN H. SHELDON, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
June 28, 2016

**I. BACKGROUND**

On May 28, 2015, a grand jury sitting in the Middle District of Pennsylvania indicted Defendant Wynn Sheldon in two counts of threatening a federal official in violation of 18 U.S.C. § 115(a)(1)(B) and three counts of threatening the family of a federal official in violation of 18 U.S.C. § 115(a)(1)(A). At the time of his initial appearance, Defendant Sheldon was a federal inmate at USP Allenwood. Defendant Sheldon was detained at the time of the indictment; he, therefore, did not contest detention but reserved his right to challenge it.

Defendant Sheldon completed his sentence on March 14, 2016 and has since been held as a pre-trial detainee at the Columbia County Prison. Jury selection and trial is currently scheduled for August 1, 2016; however, there are currently six pending pre-trial motions in this matter. Defendant Sheldon has now filed a motion

for review and revocation of pre-trial detention order. For the following reasoning, his motion is denied.

## II. ANALYSIS

In deciding whether to release or detain a defendant pending trial, a court must consider whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of other persons in the community.[1] To do this, the court must consider the following factors:

> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . .;
>
> **(2)** the weight of the evidence against the person;
>
> **(3)** the history and characteristics of the person . . . and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.[2]

In advocating for his release pending trial, Defendant Sheldon contends that he is neither a danger to the community nor a flight risk because he significant ties to Albany, New York, where he has lived his entire life. His mother, brother, sister, and other family members reside in the Albany area and have apparently indicated a willingness to act as third-party custodians to assure Defendant Sheldon's attendance at trial. Defendant Sheldon also proposes the imposition of certain

---

[1] 18 U.S.C. § 3142(g).
[2] *Id.*

2

conditions, including electronic monitoring to address any of the Court's other concerns.

The Government, unsurprisingly, argues that Defendant Sheldon is a danger to the community and should not be released from pre-trial detention. It contends that the factors which the Court must consider weigh against granting Defendant Sheldon's motion because there is substantial evidence against him in the instant case, which is a crime of violence as defined by 18 U.S.C. § 3156(a)(4)(A).

Specifically, Defendant Sheldon was charged with the underlying crimes after threatening to kill J.M., a Lieutenant at USP Allenwood (hereinafter "Lt. J.M."), and his family, during a transport. Defendant Sheldon's alleged threats were captured on video by prison staff recording the transport. According to the Government, Defendant Sheldon made the following statements captured on the video:

> I'll kill your whole family m----- f-----. Take that to the bank b----. Like I said, I'll kill your whole family b----. I live two hours from the street m----- f-----. Yeah that's why I left Florida . . . cause I get f----- information off the Internet. Show me pictures of his wife, his kids, his house, all that m----- f-----. You gonna get the same treatment b----. I go home in six months. You think this is a joke, though. I'm going to kill your whole family [victim]. And I guarantee I kill your whole family. Yeah, I guarantee that too. I live two hours up the street. I live two hours up the street [victim]. Why you think I got Florida [unintelligible] have my people go on the Internet get pictures of his wife and kids. I'm a do the same to you. And show you where you live. And I'll be knocking on your door come around January, February. And like I said I'm gonna kill your whole family [victim],

> Pennsylvania ain't but an hour and a half from Albany, New York, brother.

Three days later, Defendant Sheldon allegedly made additional threats concerning Lt. J.M. and his family to other prison officials. Nary a month later, Defendant Sheldon made further threats to Lt. J.M., stating that he gets "out in 20 months, I don't want you, I want your grandkids" and "you'll end up like that Captain in California." These threats were witnessed by other prison staff.

In addition to his numerous alleged threats, three letters sent by Defendant Sheldon to his sister and another individual identified as S.S. were intercepted by prison staff. In the letters, two sent June 29, 2014 and one sent July 7, 2014, Defendant Sheldon asked the intended recipient to search within a fifty mile radius of Allenwood, Pennsylvania, for the addresses and telephone numbers of Lt. J.M. and another prison official.

The Government further argues that Defendant Sheldon has a history of violent criminal behavior that presents a danger to the public at large. This history of violence includes a conviction of assault with the intent to commit robbery, which resulted in a sixteen-year sentence, and convictions for felony robbery, larceny, disorderly conduct, menacing, and possession of controlled substances. While on parole in 1988, Defendant Sheldon committed a home-invasion armed robbery where he forced a victim at knifepoint to write a check and then bound her

with a telephone cord and gagged her with a sock, a crime for which he was sentenced to twelve to fifteen years. Lastly, while incarcerated, Defendant Sheldon received at least fifty disciplinary infractions for assault, threats, and refusal to obey orders, among others.

With this particular background in mind, I find that Defendant Sheldon is a danger to the community at large and especially to Lt. J.M. Defendant Sheldon contends that the threats that were purportedly made should be considered in conjunction with his version of the transport, which included aggressive and forceful behavior by prison officials led by Lt. J.M. This argument is without merit. The alleged threats were made on multiple occasions over a month-long period. Furthermore, Defendant Sheldon's alleged threats were reinforced with multiple attempts to locate Lt. J.M.'s home address.

In addition to the fact that the charged offense is a crime of violence, the weight of the evidence against Defendant Sheldon is substantial. The purported threats were recorded and witnessed by various prison officials. The letters sent by Defendant Sheldon to his sister and S.S. asking them to search for Lt. J.M.'s home address were intercepted by prison staff.

Defendant Sheldon has also been previously convicted of multiple crimes of violence and has shown that even on parole, he is a danger to the community at

large. Consequently, all of the factors this Court must consider enumerated in 18 U.S.C. § 3142(g) weigh against granting Defendant Sheldon's motion.

## III. CONCLUSION

In accordance with the foregoing reasoning, Defendant Sheldon's motion for review and revocation of the pre-trial detention order is denied.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge