IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 4:15-CR-105 |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| WYNN H. SHELDON, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
July 25, 2016

## I. BACKGROUND

On May 28, 2015, a grand jury sitting in the Middle District of Pennsylvania indicted Defendant Wynn Sheldon with two counts of threatening a federal official in violation of 18 U.S.C. § 115(a)(1)(B) and three counts of threatening the family of a federal official in violation of 18 U.S.C. § 115(a)(1)(A). At the time of his initial appearance, Defendant Sheldon was a federal inmate at United States Penitentiary, Allenwood ("USP Allenwood"). He completed his sentence on March 14, 2016 and has since been held as a pre-trial detainee at the Columbia County Prison.

Presently before this Court are six pre-trial motions filed by Defendant Sheldon: a motion to dismiss indictment for failure to state a federal offense,[1] a

---

[1] ECF No. 38.

motion to dismiss counts two, four, and five,[2] a motion to compel disclosure of personnel files,[3] a motion to dismiss indictment due to selective prosecution,[4] a motion to dismiss indictment due to destruction of evidence,[5] and a motion to strike surplusage from the indictment.[6] For the following reasoning, all of Defendant Sheldon's motions are denied.

## II. BACKGROUND

On June 24, 2014, Defendant Sheldon, an inmate at USP Allenwood, was housed in the Special Housing Unit (hereinafter "the SHU"). Lieutenant J.M. (hereinafter "Lt. J.M.") ordered Defendant Sheldon to submit to hard restraints in order to be moved in compliance with Federal Bureau of Prison ("BOP") policy. Inmates in the SHU are moved, with restraints, every twenty-one days. In response to the order, Defendant Sheldon became disruptive. The prison warden then authorized a forced movement, a procedure in which five staff members wearing full protective gear together with a lieutenant and a medical staff member move the inmate to another cell. Forced movements are video recorded.

The video recording of Defendant Sheldon's forced movement documented alleged threats by Defendant Sheldon. According to the Government, Defendant Sheldon made the following statements as captured on the video:

---

[2] ECF No. 64.
[3] ECF No. 36.
[4] ECF No. 40.
[5] ECF No. 42.
[6] ECF No. 62.

I'll kill your whole family m----- f-----. Take that to the bank b----. Like I said, I'll kill your whole family b----. I live two hours from the street m----- f-----. Yeah that's why I left Florida . . . cause I get f----- information off the Internet. Show me pictures of his wife, his kids, his house, all that m----- f-----. You gonna get the same treatment b----. I go home in six months. You think this is a joke, though. I'm going to kill your whole family [victim]. And I guarantee I kill your whole family. Yeah, I guarantee that too. I live two hours up the street. I live two hours up the street [victim]. Why you think I got Florida [unintelligible] have my people go on the Internet get pictures of his wife and kids. I'm a do the same to you. And show you where you live. And I'll be knocking on your door come around January, February. And like I said I'm gonna kill your whole family [victim], Pennsylvania ain't but an hour and a half from Albany, New York, brother.

Three days later, Defendant Sheldon allegedly made additional threats concerning Lt. J.M. and his family to other prison officials, indicating that he would carry out his threats and "kill him and his whole family." A month later, on July 23, 2014, Defendant Sheldon threatened to assault him with a liquid in a milk carton after Defendant Sheldon was told to submit to hand restraints in anticipation of receiving a new cell mate. Later that day, Defendant Sheldon again threatened Lt. J.M., stating that he gets "out in 20 months, I don't want you, I want your grandkids" and "you'll end up like that Captain in California." These threats were witnessed by other prison staff.

The following day, Lt. J.M. approached Defendant Sheldon's cell after Defendant Sheldon activated the duress alarm. Lt. J.M. found him standing,

looking out of the window of the cell, appearing agitated. Defendant Sheldon then stated that he would "brutalize" the wife of Lt. J.M. upon his release.

In addition to his numerous alleged threats, three letters sent by Defendant Sheldon to his sister and another individual identified as S.S. were intercepted by prison staff. In the letters, two sent June 29, 2014 and one sent July 7, 2014, Defendant Sheldon asked the intended recipient to search within a fifty mile radius of Allenwood, Pennsylvania, for the addresses and telephone numbers of Lt. J.M. and another prison official.

## III. DISCUSSION

### A. Motion to Dismiss Indictment for Failure to State a Federal Offense

Defendant Sheldon contends that the indictment, in which he is charged with violating 18 U.S.C. § 115(a)(1)(A), should be dismissed because Lt. J.M. is not a victim under the statute.[7] He argues that Lt. J.M. is neither a United States official, a United States judge, nor a Federal law enforcement officer, victims covered by § 115.[8] The Government, conversely, argues that Lt. J.M. is a victim under the charged statute because he is both a federal law enforcement officer and an officer or employee of the United States under 18 U.S.C. § 1114.[9]

Section 115 of Title 18 provides in pertinent part:

---

[7] ECF No. 39.
[8] *Id.*
[9] ECF No. 68.

Whoever ...

(A) assaults, kidnaps, or murders, or attempts or conspires to kidnap or murder, or threatens to assault, kidnap or murder a member of the immediate family of a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under section [18 U.S.C. §]1114 of this title; or

(B) threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, *or an official whose killing would be a crime under* [1114],

with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).[10]

Title 18, Section 1114, of the United States Code, in turn, applies to "any officer or employee of the United States or of any agency in any branch of the United States Government. . . while such officer or employee is engaged in or on account of the performance of official duties."[11] The United States Court of Appeals for the Third Circuit further clarified that "both 'officer[s] and employee[s]'" fall under the protections of §115.[12]

---

[10] 18 U.S.C. § 115(a)(1) (emphasis added).
[11] 18 U.S.C. § 1114.
[12] *U.S. v. Bankoff*, 613 F.3d 358, 370 (3d Cir. 2010).

It is beyond dispute that at the time of the alleged crime, Lt. J.M. was employed as a Lieutenant by the BOP and was engaged in the performance of his official duties. Lt. J.M. clearly falls under the protections of § 115.[13]

## B. Supplemental Motion to Dismiss Counts 2, 4, and 5 of the Indictment

Defendant Sheldon further seeks to dismiss the three counts that charge him with threatening the family of Lt. J.M. because, he argues, an essential element in each of those counts is an intent to communicate the threat to the alleged victim.[14] He contends that the indictment fails to allege any intent to communicate Defendant Sheldon's alleged threats to Lt. J.M.'s family members.[15] Defendant Sheldon argues that the indictment fails to allege sufficient facts constituting which "immediate family" members he threatened to murder or the method by which he was purportedly going to murder them.[16]

The Government counters that it is immaterial whether Lt. J.M.'s family members knew of the threats against them because the intended victim of Defendant Sheldon's threats was, in fact, Lt. J.M.[17] The Government further asserts that the indictment should be deemed sufficient because it tracks the language of

---

[13] The government further cites considerable support for the contention that Lt. J.M. is also "federal law enforcement" under §115. In the interest of brevity considering the number of motions and the fact that Lt. J.M. is protected by §115 for the reason cited above, this Court declines to discuss this argument.
[14] ECF No. 65.
[15] *Id.*
[16] *Id.*
[17] ECF No. 73.

the statute and puts Defendant Sheldon on notice that he is being prosecuted.[18] It adds that the use of the words "immediate family" were fact-specific to this case because Defendant Sheldon allegedly threatened to kill Lt. J.M.'s "whole family," which would logically include those members of his immediate family.[19]

The text of 18 U.S.C. § 115(a)(1) has already been noted above. Section 115(a)(1)(A) specifically addresses threatening to murder "a member of the immediate family" of the federal official. A plain reading of the statute reveals no requirement that the threats be made directly to the family of the federal official.[20] As the Government points out, the intended victim was Lt. J.M. This Court has already established above that Lt. J.M. is a victim who falls under the protection of the statute.

Furthermore, an indictment is sufficient when it "contains the elements of the offense intended to be charged, [] sufficiently apprises the defendant of what he must be prepared to meet, and, . . . shows with accuracy to what extent he may plead a former acquittal or conviction."[21] Here, the indictment tracks the language of the statute in indicating that Defendant Sheldon threatened to murder members

---

[18] *Id.*

[19] *Id.*

[20] *See In re Credico*, 611 Fed. Appx. 754, 754 (3d Cir. 2015) (defendant was charged with violating 18 U.S.C. §115 (a)(1)(A) and 18 U.S.C. § 115(a)(1)(B) when he called an FBI agent's phone and left a voicemail threatening the agent, the agent's wife and daughter, and another agent.)

[21] *Russell v. U.S.*, 369 U.S. 749, 763-4 (1962) (internal citations omitted).

of Lt. J.M.'s "immediate family."[22] As the Government observes, Defendant

Sheldon allegedly threatened to kill Lt. J.M.'s "whole family" which obviously

includes members of his immediate family.[23] He further threatened to "brutalize"

Lt. J.M.'s wife, which is charged in Count Five, indicating that Defendant Sheldon

threatened to "assault the wife" of Lt. J.M.[24] The indictment is clearly sufficient

and the motion is denied.

## C. Motion to Compel Disclosure of Personnel Files

Defendant Sheldon also requests that this Court compel disclosure of the

personnel files of Lt. J.M., the Captain, the Warden, an Associate Warden, and

Special Investigative Services Agent Corey Heath, pursuant to *Brady v.*

*Maryland*.[25] He indicates that there is reason to believe that the files contain

exculpatory evidence of complaints by other inmates which may show that these

individuals have engaged in or been investigated for fabricating allegations of

disciplinary infractions against inmates.[26] Defendant Sheldon also argues that Lt.

J.M. also may have engaged in fabricating allegations of disciplinary infractions

when he worked as a correctional officer in the Northumberland County Prison

prior to his employment with the BOP.[27]

---

[22] ECF No. 1.
[23] ECF No. 73.
[24] ECF No. 1.
[25] 373 U.S. 83 (1963).
[26] ECF No. 37.
[27] *Id.*

The Government naturally opposes this motion and argues that it would be absurd to grant Defendant Sheldon, who is being charged with making multiple threats to murder Lt. J.M., and who further attempted to find his home address and the warden's home address, access to perform a "thorough" review of their personnel files.[28] The Government also offers to provide documents in compliance with *Giglio v. United States*,[29] if this Court finds that Lt. J.M. is a law enforcement officer and denies Defendant's motion to dismiss indictment for failure to state a federal offense.[30]

The United States Supreme Court in *Brady v. Maryland*[31] held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ."[32] The Court went on to explain that "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." Withholding "evidence that tend[s] to exculpate [the defendant] . . . helps shape a trial that bears heavily on the defendant . . . [and] does not comport with standards of justice . . . ."[33]

---

[28] ECF No. 72. The government also points out that the Captain and Special Investigative Services Agent Cory Heath are not even witnesses to the offenses and are unlikely to be involved as witnesses in this case. Accordingly, the requests for these two individual's personnel files is denied and the discussing will only concern Lt. J.M.'s and the Warden's personnel files.
[29] 405 U.S. 150 (1972).
[30] ECF No. 72.
[31] 373 U.S. 83 (1963).
[32] *Id.* at 87.
[33] *Id.* at 87-88.

That said, the Supreme Court subsequently held that "[a] defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files."[34] "[W]here a defendant makes only a general request for exculpatory material under [*Brady*], it is the [government] that decides which information must be disclosed."[35] There is no constitutional right to conduct a general search of the Government's files to argue relevance.[36]

Defendant Sheldon indicates that he seeks a thorough review of the personnel files because he claims that the BOP employees "hold a personal vendetta" against him.[37] He argues that the files are material in that they *may* contain complaints of other inmates claiming that they fabricated allegations of disciplinary infractions of other inmates.[38] As the Government points out, however, Defendant Sheldon offers nothing in support for his general request under Brady but "rank speculation."[39]

In his reply to the Government's brief, Defendant Sheldon simply argues that personnel files of government witnesses are discoverable and bias or motive found within them may be relevant impeachment evidence.[40] While this may be the case, Defendant Sheldon fails to consider that the Government intends to supply

---

[34] *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).
[35] *Id.*
[36] *Id.*
[37] ECF No. 37.
[38] *Id.*
[39] ECF No. 72 at 9.
[40] ECF No. 80.

potential impeachment information in compliance with *Giglio*[41] upon a ruling from this Court denying Defendant Sheldon's motion to dismiss for failure to state a federal offense.[42] This ruling has now been made (which denied Defendant Sheldon's motion to dismiss the indictment). Defendant Sheldon's motion to compel is therefore denied and the Government is directed to implement its in-house procedures for making a review in accordance with *Giglio*.

## D. Motion to Dismiss Indictment due to Selective Prosecution

Defendant Sheldon further argues that the crimes for which he is charged are rarely prosecuted in the Middle District of Pennsylvania.[43] He names other inmates that have similarly threatened correctional officers and were not prosecuted.[44] He contends that the Government's decision to prosecute him is based on an unjustifiable standard, namely, that his release date was approaching.[45] Alternatively, Defendant Sheldon argues that he was charged based on his race because he is African American.[46] He asks that this Court dismiss the indictment

---

[41] 405 U.S. 150.

[42] This Court notes that it is not compelled to make a ruling that Lt. J.M. is a federal law enforcement officer in order for the Government to be required to comply with *Giglio*. In *Giglio*, the Supreme Court held that a promise made to a co-conspirator witness by an Assistant United States Attorney that he would not be prosecuted in exchange for his testimony should have been revealed to the defense as it was material impeachment evidence. *Id.* at 154-5. Similarly, in *Breakiron v. Horn*, the prosecutor failed to disclose that a key witness that had testified against the defendant had sought a deal for prosecutors in an unrelated criminal investigation. 642 F.3d 126, 132-3 (3d Cir. 2011). Accordingly, the emphasis is on the prosecutor, not on the witness. Thus, if the Prosecutor in this case comes across materially relevant impeachment evidence in Lt. J.M.'s personnel files, he is required to provide that evidence to the Defense, regardless of whether Lt. J.M. is a federal law enforcement officer himself.

[43] ECF No. 41.

[44] *Id.*

[45] *Id.*

[46] ECF No. 79.

and additionally requests a hearing on this matter if the indictment is not otherwise dismissed.[47]

The Government argues that Defendant Sheldon was prosecuted because, unlike the other inmates, Defendant Sheldon continued to make threats over a two-month period.[48] The Government also points out that Defendant Sheldon took steps beyond his verbal threats and attempted to send multiple letters asking the intended recipients to search for Lt. J.M.'s home address.[49]

The Government has "broad discretion" on the decision to prosecute.[50] "[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."[51] The decision to prosecute, however, may not be made "based upon an unjustifiable standard such as race, religion or other arbitrary classification . . . ."[52]

First, this Court has previously held that "[a]n inmate's release date, unlike a ground such as race or religion, is not a suspect classification."[53] Second, there is

---

[47] *Id.*
[48] ECF No. 71.
[49] *Id.*
[50] *Wayte v. U.S.*, 470 U.S. 598, 607 (1985).
[51] *Id.* (*citing Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978)).
[52] *Id.* (*citing Bordenkircher,* 434 U.S. at 364).
[53] *U.S. v. Dixon*, 2013 WL 663572, *2 (M.D. Pa. February 22, 2013) (*citing U.S. v. Roberts*, 2008 WL 3890409 (M.D. Pa. August 19, 2008)).

absolutely no basis for Defendant Sheldon's claim that he is being prosecuted because of his race; Defendant Sheldon has made no allegations regarding racial discrimination or supplied even one fact supporting this contention in any of his multiple motions to this Court. Indeed, the fact that Defendant Sheldon is African American was never addressed to this Court until he raised this argument in his reply brief in response to the Government's opposition brief to this motion.

It appears that Defendant Sheldon is simply grasping at straws. Defendant Sheldon made multiple threats over a two-month period. He took steps in addition to his crime to attempt to locate the addresses of Lt. J.M. and the warden. Defendant Sheldon is clearly not similarly situated to the other inmates he refers to in his motion. Accordingly, this motion is denied, as is Defendant Sheldon's request for a hearing in this matter.

## E. Motion to Dismiss the Indictment due to Destruction of Evidence

Defendant Sheldon also seeks dismissal of the indictment because he contends that the Government destroyed a video tape which contained exculpatory evidence.[54] Defendant Sheldon alleges that a video was taken of him on July 24, 2014 during the feeding of the lunch meal during which Lt. J.M. admitted to fabricating the allegations of the various threats made by Defendant Sheldon to

---

[54] ECF No. 43.

justify placing him in four-point restraints.[55] He contends that the Government is either withholding or has destroyed the video.[56]

In response, the Government argues that no such video exists.[57] It explains that there are approximately five hundred cameras at USP Allenwood that feed into a computer.[58] The electronic input from the cameras are stored on a server that is automatically rewritten after fourteen days unless a particular video is manually downloaded by an officer and burned on a CD/DVD.[59] The Government further explains that the cameras in cell-blocks and ranges at USP Allenwood do not have audio feed.[60]

BOP policy requires, however, that Use of Force incidents be video recorded.[61] The forced movement of Defendant Sheldon on June 24, 2014 was video recorded and produced to Defendant Sheldon for his defense.[62] The Government argues, however, that the feeding of the lunch meal on June 24, 2014 was not video recorded, apart from the possible recordation on one of the five hundred cameras which lack audio feed and are automatically overwritten within fourteen days of recording.[63]

---

[55] *Id.*
[56] *Id.*
[57] ECF No. 70.
[58] *Id.*
[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *Id.*
[63] *Id.*

14

A criminal defendant has a constitutionally protected right to request and obtain evidence to be used against him from the prosecution.[64]  Likewise, "the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt."[65] The duty to preserve evidence, however, is limited to evidence that might be expected to play a significant role in the defendant's defense.[66] In order to gauge the materiality of evidence, the United States Supreme Court established a two-pronged test: first, the evidence must "possess an exculpatory value that was apparent before the evidence was destroyed" and second, the evidence must be of "a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."[67] The defendant must then show that the police failed to preserve the potentially useful evidence in bad faith.[68]

The existence of the video in this matter is disputed. Defendant Sheldon states that he "specifically recalls that during the feeding of the lunch meal on July 24, 2014 Officer Temple was operating a video camera with [Lt. J.M.] and Officer Sommes present."[69] The Government, on the other hand, states that no such video

---

[64] *Brady*, 373 U.S. at 87.
[65] *California v. Trombetta*, 467 U.S. 479, 485 (1984) (*citing U.S. v. Agurs*, 427 U.S. 97, 112 (1976)).
[66] *Id.* at 488.
[67] *Id.* at 489.
[68] *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).
[69] ECF No. 43.

existed.[70] It indicates that "[m]ultiple [BOP] employees dispute the existence of this video" and argues that BOP policy supports its contention that no video exists because BOP policy does not require feedings to be videotaped, absent unusual circumstances, of which there were none on July 24, 2014.[71]

Regardless of whether the video exists, Defendant Sheldon's motion is denied. Defendant Sheldon has failed to set forth sufficient facts to indicate the actual existence of the video, let alone sufficient evidence that the Government destroyed it in bad faith. Furthermore, Defendant Sheldon himself indicated in his brief in support of this motion that several witnesses were present during the feeding on July 24, 2014. Consequently, even if Lt. J.M. would not admit to fabricating allegations of threats if he were called to testify Defendant Sheldon would have the opportunity to call the other witnesses who were present during the feeding of the meal to testify on his behalf. Accordingly, Defendant Sheldon has the ability to introduce comparable evidence, if some should exist, by calling the multiple other witnesses to testify.

## F. Motion to Strike Surplusage from Indictment

Lastly, Defendant Sheldon requests that this Court strike his BOP inmate registration number from the indictment.[72] He argues that this number is not

---

[70] ECF No. 70.
[71] *Id.*
[72] ECF No. 63.

needed for identification purposes and therefore serves no relevant purpose.[73] He further contends that it is prejudicial because it does nothing more than highlight his status as a sentenced inmate and "dehumanizes" him before the jury.[74] The Government opposes this motion, arguing that the use of the inmate number is simply evidence of Defendant Sheldon's identity and is neither prejudicial nor inflammatory.[75]

Federal Rule of Criminal Procedure 7(d) provides that, upon a motion by a defendant, "the court may strike surplusage from the indictment or information." The purpose of this rule is to protect "the defendant against immaterial or irrelevant allegations in an indictment or information, which may . . . be prejudicial."[76] While motions to strike surplusage are rarely granted,[77] "the court may strike surplusage from the indictment or information when it is both irrelevant (or immaterial) and prejudicial."[78] As the Third Circuit explains:

> Logic demands the conjunctive standard: information that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion.[79]

---

[73] *Id.*

[74] *Id.*

[75] ECF No. 69.

[76] Fed. R. Crim. P. 7(d) Advisory Committee's Note.

[77] *U.S. Hedgepeth*, 434 F.3d 609 (3d Cir. 2006) (citing *U.S. v. Alsugair*, 256 F. Supp. 2d 306, 317 (D.N.J. 2003)).

[78] *Hedgepeth*, 434 F.3d at 612 (see for a detailed discussion of the standard in the Third Circuit).

[79] *Id.*

Defendant Sheldon's inmate number is likely irrelevant. The Government contends that the inmate number was included in the indictment merely for identification purposes. Defendant Sheldon has since, however, completed his sentence with the BOP and his inmate number no longer serves as a means to identify him.

On the other hand, the Government contends that, should this case proceed to trial, it intends to introduce documents that identify Defendant Sheldon by name and inmate number. Furthermore, the fact that Defendant Sheldon's previous inmate number is on the indictment will do nothing to prejudice his case. Defendant Sheldon was an inmate at the time of the charged offenses. A jury would immediately be made aware of his incarceration status as soon as any testimony is presented to them. Accordingly, this motion is denied.

## III. CONCLUSION

In accordance with the foregoing reasoning, Defendant Sheldon's motion to dismiss indictment for failure to state a federal offense,[80] motion to dismiss counts two, four, and five,[81] motion to compel disclosure of personnel files,[82] motion to dismiss indictment due to selective prosecution,[83] motion to dismiss indictment due

---

[80] ECF No. 38.
[81] ECF No. 64.
[82] ECF No. 36.
[83] ECF No. 40.

to destruction of evidence,[84] and motion to strike surplusage from the indictment,[85]

are all denied.

An appropriate Order follows.

BY THE COURT:


<u>s/ Matthew W. Brann</u>
Matthew W. Brann
United States District Judge

---

[84] ECF No. 42.
[85] ECF No. 62.

19